1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10   MEAGHAN SHARP,                    )   Case No. CV 12-2939-PJW
                                       )
11               Plaintiff,            )
                                       )   MEMORANDUM OPINION AND ORDER
12        v.                           )
                                       )
13   CAROLYN W. COLVIN,                )
     ACTING COMMISSIONER OF THE        )
14   SOCIAL SECURITY ADMINISTRATION,   )
                                       )
15               Defendant.            )
     _____)

16

17                       I.   INTRODUCTION

18        Plaintiff appeals a decision by Defendant Social Security

19   Administration ("the Agency"), denying her application for Disability

20   Insurance Benefits ("DIB").  She claims that the Administrative Law

21   Judge ("ALJ") erred when she found that Plaintiff was not credible,

22   rejected the opinions of her treating doctors, and failed to include

23   all of her limitations in the hypothetical question to the vocational

24   expert.  For the reasons explained below, the Court concludes that the

25   ALJ erred and remands the case to the Agency for further proceedings.

26               II.        SUMMARY OF PROCEEDINGS

27        In June 2008, Plaintiff applied for DIB, alleging that she had

28   been unable to work since June 2007, due to pseudotumor cerebri,

1 epilepsy, depression, migraines, back pain, vision problems, and

2 memory loss. (Administrative Record ("AR") 137, 144.) Her

3 application was denied initially and on reconsideration and she

4 requested and was granted a hearing before an ALJ. (AR 97-98, 101-10,

5 112-19.) On October 4, 2010, Plaintiff appeared with counsel at an

6 administrative hearing. (AR 62-96.) On October 29, 2010, the ALJ

7 issued a decision denying benefits. (AR 24-33.) The ALJ found that

8 Plaintiff's pseudotumor cerebri, mood disorder, depression, headaches,

9 obesity, L5-S1 disc bulge, and history of seizures were severe

10 impairments but that they did not meet or equal a Listed impairment.

11 (AR 26, 27.) She then determined that Plaintiff had the residual

12 functional capacity to perform unskilled light work as long as she had

13 the option of alternating between sitting and standing--though not at

14 will--and did not have to meet a high production quota. (AR 27.)

15 Relying on the testimony of a vocational expert, the ALJ concluded

16 that Plaintiff could not perform her past relevant work but could

17 perform other jobs that existed in the national economy. (AR 31-32.)

18 Plaintiff appealed to the Appeals Council, which denied review. (AR

19 1-10, 17-18.) She then commenced this action.

20                                    II.

21                                  ANALYSIS

22 A.   Plaintiff's Credibility

23      Plaintiff testified that she could no longer work due to constant

24 headaches caused by the buildup of fluid in her brain. (AR 70-71, 84,

25 188.) She claimed that on average she experienced headaches severe

26 enough to force her to stay in bed all day about five days out of the

27 month. (AR 82.) She also testified that she suffered from low back

28 pain--which prevented her from sleeping for more than a few hours at a

time--and that she spent most of her day lying down.  (AR 71, 74, 87.)
The ALJ rejected this testimony.  For the following reasons, the Court
finds that she erred in doing so.

ALJs are tasked with judging the credibility of the claimants.
In making these credibility determinations, they may employ ordinary
credibility evaluation techniques.  *Smolen v. Chater*, 80 F.3d 1273,
1284 (9th Cir. 1996).  But, where a claimant has produced objective
medical evidence of an impairment which could reasonably be expected
to produce the symptoms alleged and there is no evidence of
malingering, the ALJ can only reject the claimant's testimony for
specific, clear, and convincing reasons, *id.* at 1283-84, that are
supported by substantial evidence in the record.  *Thomas v. Barnhart*,
278 F.3d 947, 959 (9th Cir. 2002).

The ALJ's first reason for discounting Plaintiff's testimony was
that Plaintiff acknowledged that her seizures were controlled with
medication.  (AR 28.)  Although this can be a valid basis for
questioning a claimant's allegations of disabling symptoms, *see*, *e.g.*,
*Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.
2006) (holding "impairments that can be controlled effectively with
medication are not disabling"), Plaintiff's seizures are not what
prevent her from working.  Her headaches and back pain are, which are
not controlled with medication.  Thus, the Court does not find this a
convincing reason for rejecting her testimony.

The second reason the ALJ gave for questioning Plaintiff's
testimony was that her doctors treated her with "limited and
conservative treatment."  (AR 28.)  Generally speaking, this is a
valid reason for questioning a claimant's testimony.  *See*, *e.g.*, *Parra
v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  The records show,

3

however, that Plaintiff's treatment was not conservative.  For example, in October 2009, her surgeon, Dr. James Herman, noted that, though her prior treatment had been conservative, it had not worked and "she has had progressive worsening of headaches and neurologic deterioration." (AR 622.)  For this reason, he decided that a shunt was necessary and surgically implanted one in her spine.  (AR 622-24.) Though Plaintiff experienced some relief, she still had pain and headaches so a second surgery was performed in an attempt to improve the effectiveness of the shunt.  (AR 620-21.)  Plaintiff and her doctor are now considering whether a new shunt should be placed in her head.

The Court would not characterize this treatment as conservative or limited.  Further, there is no evidence in the record that a more aggressive treatment was called for and that Plaintiff declined to undergo it.  As such, the Court rejects the ALJ's finding that Plaintiff's testimony that she was experiencing disabling pain and headaches was contradicted by the fact that she had elected conservative treatment.

The ALJ's third reason for discounting Plaintiff's testimony was that the objective medical evidence did not fully support her allegations.  (AR 28.)  This reason, too, is rejected.  In the first place, it is too general and vague.  The ALJ was required to set forth what evidence failed to support Plaintiff's allegations and why so that the parties would understand and so that the Court could conduct meaningful review of the ALJ's decision.  *See*, *e.g.*, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883-85 (9th Cir. 2006) (explaining ALJ's conclusion that claimant's testimony "was 'not consistent with or supported by the overall medical evidence of record'" did not

4

constitute a "meaningful explanation" for the court to assess).
Second, arguably, the objective evidence supports Plaintiff's
allegations of disabling pain.  Even after her treatments, Plaintiff
still suffered from headaches, vision loss, and "spotting" in her
vision, which is why she and her doctor considered putting a shunt in
her head.  (AR 73, 540, 585-86.)

The ALJ's fourth reason for rejecting Plaintiff's credibility was
that her claimed limitations were "inconsistent with the extensive
activities [she] performs as a single mother of 3 young children."
(AR 31.)  The record does not support this justification, either.

The ALJ did not explain what activities Plaintiff undertook with
her children that were inconsistent with her allegations of disabling
headaches and lower back pain.  Though, as a general matter, the Court
would be inclined to agree with the ALJ's sentiment that a single mom
raising three young children is required to perform numerous
activities on a daily basis that might translate into the workplace,
Plaintiff testified that she gets help with childcare from her family
and friends, including her mother, her stepmother, the father of her
four-year-old, her landlord, and others.  (AR 66-68.)  She also
explained that on days that she suffered from a particularly bad
headache her parents took care of her kids.  (AR 82.)  Finally, she
testified that, though she was able to help her kids with their
homework, she was only able to do so for 20 minutes at a time, after
which she had to rest for 20 minutes.  (AR 85.)

The ALJ never addressed this testimony.  So it is hard for the
Court to determine what, if any role, it played in her decision.
Practically speaking, in order to decide whether Plaintiff's childcare
activities contradicted her testimony the Court would have to have

those activities quantified.  Because they were not, the Court does not find this a convincing reason for rejecting Plaintiff's testimony.

In the end, the Court finds that the reasons offered by the ALJ for discounting Plaintiff's testimony are not specific, clear, and/or convincing and, therefore, the credibility decision is reversed.  The issue that remains is whether the Court should credit Plaintiff's testimony as true and remand the case to the Agency for an award of benefits or whether it should remand the case for further considera-tion of the credibility issue.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The Court concludes that remand is warranted because it is not clear from the record whether Plaintiff's ailments and the pain caused by them preclude her from performing all work, triggering her entitlement to benefits.  *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be."); *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (holding "credit as true" doctrine not mandatory and remanding case to Agency for reconsideration of credibility issue).

B.   The Treating Physicians

Plaintiff argues that the ALJ erred by failing to provide adequate reasons for rejecting the opinions of her treating doctors.  For the following reasons, the Court agrees.

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians."  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining that a treating physician's opinion "is given deference because 'he is employed to cure and has a greater

6

opportunity to know and observe the patient as an individual'" (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))).  For this reason, a treating physician's opinion regarding a claimant's medical condition that is well supported and not inconsistent with other substantial evidence in the record will be given controlling weight.  *Orn*, 495 F.3d at 631; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  Nevertheless, an ALJ may reject a treating doctor's opinion that is contradicted by another doctor's opinion for specific and legitimate reasons that are supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

i.   Plaintiff's Physical Ailments

Plaintiff suffered from headaches and lower back pain for years. The medical records she submitted in connection with her treatment run from 2007 to right before the ALJ's decision in October 2010.  All of her treating doctors, except her surgeon, Dr. Herman, believed that her physical ailments and the pain that they caused prevented her from working.  (AR 512-18, 579-83, 586-90.)  Initially, Dr. Herman determined that Plaintiff was severely limited but later concluded that she could work despite her headaches.  (AR 524, 705-10.)  The ALJ relied on this opinion from Dr. Herman and an October 2008 opinion from reviewing doctor J. Glaser to find that Plaintiff could work. (AR 30, 381-85.)  She credited these doctors based on the "supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization."  (AR 30-31.)

The ALJ's decision to reject the treating doctors' opinions is overruled.  To begin with, the Court does not find the reviewing doctor's opinion of much value.  He is a pediatrician and he reviewed

7

1  only a small portion of the records now before the Court because most

2  of them were created after he rendered his opinion in October 2008.[1]

3  (AR 378-80.)

4       In addition, the ALJ's finding that the medical signs and

5  laboratory findings support the non-treating doctors is too vague to

6  be upheld on appeal.  Finally, though the Court would, generally

7  speaking, be comfortable with the ALJ relying on treating doctor

8  Herman's July 2010 opinion that Plaintiff had the physical functional

9  capacity to work, Dr. Herman qualified his opinion, stating that

10 Plaintiff's work limitations were "more related to her underlying

11 disease" and that he would defer to her neurologist or primary care

12 physician on those issues.  (AR 633.)  Plaintiff's primary care

13 physician and her neurologist opined that she did not have the

14 capacity to work.  Thus, the Court concludes that none of the ALJ's

15 reasons for rejecting the other treating doctors' opinions is valid.

16      ii.  Plaintiff's Psychological Ailments

17      Psychologist Karen Parker Anderson treated Plaintiff for

18 depression from January 2009 to June 2010.  (AR 209-10, 566.)  On

19 August 23, 2010, she opined that Plaintiff would be moderately limited

20 in her ability to interact with supervisors and coworkers, understand

21 and carry out complex job instructions, deal with the public, and

22 maintain concentration and attention for two-hour increments.  (AR

23 558.)  She also believed that Plaintiff would be markedly limited in

24

25      [1]  Dr. Glaser listed his specialty as "32."  (AR 385.)  According
   to the Agency's website, this is the designation for pediatrics.  See
26 https://secure.ssa.gov/poms.nsf/lnx/0426510090.  Another pediatrician,
   Dr. Harar, also reviewed the file in April 2009, along with a Dr.
27 Dudley, and arrived at a similar conclusion (AR 228-30), but the ALJ
   did not cite to this opinion as a reason for rejecting the treating
28 doctors' opinions.  (AR 30.)

her ability to withstand the stress and pressures of an eight-hour workday.  (AR 558.)  Dr. Parker Anderson noted that Plaintiff had reported auditory hallucinations and had previous suicide attempts and believed that Plaintiff's mental impairments would cause her to miss work more than three times a month.  (AR 560-62.)

The ALJ rejected Dr. Parker Anderson's opinion and accepted, instead, the opinions of examining psychologist Rosa Colonna, who found that Plaintiff could remember and perform simple instructions and would have no other restrictions (AR 262), and reviewing psychologist Brady Dalton, who essentially concurred with Dr. Colonna. (AR 239-55.)  The ALJ based this ruling on the "supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization."  (AR 30-31.)  She went on to offer generalized reasons for relying on the non-treating doctors, for example, because Plaintiff's treating doctors were "sympathetic" and reported "extreme limitations" that were "not really supported by the progress notes or the objective findings."  (AR 31.)

These findings are rejected.  First, they are too general.  The ALJ did not explain what portion of the Dr. Parker Anderson's opinion was contradicted by what evidence in the record.  Nor did she explain how the non-treating doctors' opinions were better supported than Parker Anderson's was.  This was error.  *See*, *e.g.*, *Embrey*, 849 F.2d at 421-22 (holding ALJ's reasons for rejecting doctor's opinion not clear and convincing where ALJ "merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects").  Second, the ALJ's determination that the non-treating doctors' opinions were entitled to more weight

9

because they were offering opinions in their area of expertise, implying that Dr. Parker Anderson was not offering an opinion relating to her area of expertise, was wrong.  Dr. Parker Anderson is a psychologist, just like the examining and reviewing psychologists who offered opinions in this case.  (AR 241, 262, 566.)  All things being equal then, the ALJ should have relied on Parker Anderson.  *See Smolen*, 80 F.3d 1273 at 1285.  Third, absent evidence that Parker Anderson was not being objective, the ALJ was not allowed to assume that she was biased.  *Haulot v. Astrue*, 290 Fed. App'x 53, 54 (9th Cir. 2008) (holding ALJ's statement that treating doctor was "sympathetic" to claimant did not constitute substantial evidence for rejecting his considered diagnosis); *see also Lester*, 81 F.3d at 832 (noting Agency "may not assume that doctors routinely lie in order to help their patients collect disability benefits.").

Finally, to the extent that the ALJ rejected Dr. Parker Anderson's views because they were based on Plaintiff's statements, which the ALJ questioned, that reason is rejected, too, based on the Court's finding that the ALJ erred in analyzing Plaintiff's credibility.

For all these reasons, this issue, too, is reversed and remanded to the ALJ to reconsider in light of the Court's ruling.[2]

_____

[2]  Again, the Court recognizes that it has the authority to reverse the Agency's decision, credit the treating doctors' opinions, and remand the case for an award of benefits.  The Court declines to do so here, however, because it is not clear that, even accepting the treating doctors' opinions, Plaintiff is precluded from all work.  *See Strauss,* 635 F.3d at 1138; and *Connett*, 340 F.3d at 876.  That issue should be further developed below.

10

1  D.    <u>The Residual Functional Capacity Determination</u>

2        Plaintiff contends that the ALJ did not consider all of her

3  limitations in determining her residual functional capacity and did

4  not include those limitations in the hypothetical question to the

5  vocational expert.  In particular, she argues that the ALJ professed

6  to adopt the opinions of Drs. Herman and Glaser but did not

7  incorporate all of the limitations they had found.  She points out,

8  for example, that the ALJ failed to adopt any limitations caused by

9  her headaches, transient vision loss, and obesity. (Joint Stip. at

10  31-35.)  In light of the Court's rulings herein, this issue, too, is

11  remanded to the Agency for further development.

12                        IV.   RECOMMENDATION

13        For these reasons, the decision of the Agency is reversed and the

14  case is remanded for further consideration consistent with this

15  Memorandum Opinion and Order.

16        IT IS SO ORDERED.

17        DATED: November 21 , 2014

18        *Patrick J. Walsh*

19        _____

20        PATRICK J. WALSH
          UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28  S:\PJW\Cases-Social Security\SHARP, 2939\Memorandum Opinion and Order.wpd